CONSUMER PAPER

# CLOSED END MOTOR VEHICLE LEASE (WITH ARBITRATION PROVISION)

CHEVROLET

Lease Date: 11/06/2017

| Lessor Name and Business Address | Lessee Name and Address | Co-Lessee Name and Address |
|---|---|---|
| SERPENTINI CHEVROLET<br>140 WEST AVE.<br>TALLMADGE OH 44278 | JEFFREY L SMITH<br>3024 ELLET AVE<br>AKRON OH 44312<br>County: SUMMIT | N/A<br>County: |

| Lessee Billing Address (if different than above) | Vehicle Garaging Address (if different than above) |
|---|---|
| N/A | N/A<br>County:<br>Principal Driver (if business use): N/A |

In this Lease, "you" and "your" mean the lessee and co-lessee. "We," "us" and "our" mean the lessor, and any assignee of this Lease. The terms, conditions, and disclosures in this Lease govern your Lease with us. Each of you who signs the Lease is jointly and severally liable to us for all Lease obligations. You are leasing the Vehicle described below (the "Vehicle") from us. You agree to pay all amounts due under the Lease and fulfill all your obligations under the Lease. In this Lease, "e" means an estimate. The Consumer Leasing Act Disclosures shown below are also terms of this Lease. You are leasing the Vehicle and have no ownership rights in the Vehicle unless you exercise your purchase option.

Monthly Payment Lease: If your payment schedule shows monthly scheduled payments in Item 3A, your lease is a monthly payment lease.
Single Payment Lease: If your payment schedule shows a single scheduled payment in Item 3B, your lease is a single payment lease.

## 1. The Vehicle

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | Odometer | Primary Use |
|---|---|---|---|---|---|---|---|
| USED | 201[illegible] | CHEVROLET | MALIBU | 4DR SDN LT | 1G1ZE5ST8HF144570 | 4745 | Personal, unless otherwise indicated below ☐ business ☐ agricultural |

## CONSUMER LEASING ACT DISCLOSURES

**2. Amount Due at Lease Signing or Delivery** (Itemized in Item 6): $ 6300.00

**3. Scheduled Payments**
A. Your first monthly payment of $ 271.26 is due on 11/06/17 followed by 47 monthly payments of $ 271.26 due on the 6th of each month.
B. Your single payment of $ N/A is due on N/A
C. The Total of your Scheduled Payments is $ 13020.48

**4. Other Charges** (not part of your scheduled payment)
A. Disposition fee (if you do not purchase the Vehicle and we do not ...) $ 395.00
B. N/A $ N/A
C. N/A $ N/A
D. Total $ 395.00

**5. Total of Payments** (The amount you will have paid by the end of the Lease) $ 19444.22 (2 + 3C + 4D - 6A3 - 6A4 - 6A5)

## 6. Itemization of Amount Due at Lease Signing or Delivery

**A. Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| 1. Capitalized cost reduction | $ 6028.74 |
| 2. Taxes on capitalized cost reduction | $ N/A |
| 3. First monthly payment | $ 271.26 |
| 4. Single scheduled payment | $ N/A |
| 5. Refundable security deposit | $ N/A |
| 6. Lease acquisition fee | $ N/A |
| 7. Title fees | $ N/A |
| 8. License and registration fees | $ N/A |
| 9. Sales/use tax | $ N/A |
| 10. N/A | $ N/A |
| 11. N/A | $ N/A |
| 12. Total | $ 6300.00 |

**B. How the Amount Due at Lease Signing or Delivery will be paid:**

| | |
|---|---|
| 1. Net trade-in allowance | $ N/A |
| 2. Rebates and noncash credits | $ 4900.00 |
| 3. Amount to be paid in cash | $ 1400.00 |
| 4. Other N/A | $ N/A |
| 5. Total | $ 6300.00 |

## 7. Your scheduled payment is determined as shown below:

| | | |
|---|---|---|
| A. Gross capitalized cost. The agreed upon value of the Vehicle ($ 22650.00) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance). | | $ 28627.46 |
| B. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost. | - | $ 6028.74 |
| C. Adjusted capitalized cost. The amount used in calculating your base scheduled payment. | = | $ 22598.72 |
| D. Residual value. The value of the Vehicle at the end of the Lease used in calculating your base scheduled payment. | - | $ 11423.75 |
| E. Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term. | = | $ 11174.97 |
| F. Rent charge. The amount charged in addition to the depreciation and any amortized amounts. | + | $ 1845.51 |
| G. Total of base scheduled payments. The depreciation and any amortized amounts plus the rent charge. | = | $ 13020.48 |
| H. Lease payments. The number of payments in your Lease. | ÷ | 48 |
| I. Base scheduled payment. | = | $ 271.26 |
| J. Sales/use tax (s). | + | $ N/A |
| K. N/A | + | $ N/A |
| L. N/A | + | $ N/A |
| M. Total Scheduled Payment. | = | $ 271.26 |

**Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12000 miles per year at the rate of $ 0.25 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ 11423.75 plus a purchase option fee of $ 0.00. The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**10. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## 11. The Trade-In Vehicle

Year N/A
Make N/A
Model N/A

| | | |
|---|---|---|
| A. Gross Amount of Trade-In Allowance | | $ N/A |
| B. Prior Credit or Lease Balance | - | $ 3838.72 |
| C. Net Trade-In Allowance (if less than 0 enter 0) | = | $ 0.00 |

## 12. Itemization of Gross Capitalized Cost

| | |
|---|---|
| A. Agreed upon value of the Vehicle: | $ 22650.00 |
| Other amounts included in the gross capitalized cost: | |
| B. Taxes | $ 1193.74 |
| C. Title, license, and registration fees | $ 100.00 |
| D. Lease acquisition fee | $ 595.00 |
| E. Documentation fee | $ 250.00 |
| F. Prior credit or lease balance | $ 3838.72 |
| G. N/A | $ N/A |
| H. N/A | $ N/A |

| Optional Products and Services: | |
|---|---|
| I. N/A | $ N/A |
| J. N/A | $ N/A |
| K. N/A | $ N/A |
| L. N/A | $ N/A |
| M. N/A | $ N/A |
| N. N/A | $ N/A |
| O. N/A | $ N/A |
| P. Total Gross Capitalized Cost | $ 28627.46 |

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS LEASE, WE MAY RETAKE THE VEHICLE.**

**13. Official Fees and Taxes.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in your scheduled payments or assessed otherwise: $ 1293.74(e). The total fees and taxes you pay may be different than this estimate based on changes in the law or fee rates and the value of the Vehicle when the fee or tax is determined.

**14. Late Payments.** For any payment not received within 10 days of the date it is due, you will pay a late charge of The lesser of $25 or 5% [illegible]. You will not have to pay a late charge if the only amount that is late is a late charge you owed for an earlier late payment.

**15. Returned Payments and Unpaid Fines and Fees.** You will also pay a returned payment charge of $ 0.00 for any check, instrument or electronic funds debit that is returned unpaid for any reason, if the law allows it. If you don't pay a fine, penalty, toll, or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus a $ 25.00 Administrative Fee per incident, if the law allows it.

**16. Warranties.** The Vehicle is subject to the manufacturer's standard warranty unless this box is checked ☐.
☐ If this box is checked, the Vehicle is subject to the following express warranties:
N/A
N/A
N/A
Warranty papers that are separate from this Lease state any coverage limits.
The law gives you a warranty that the Vehicle conforms to the description in this Lease. THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.
Except as prohibited by law, the following disclaimer applies. WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.
If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the written warranty or service contract.

## 17. OPTIONAL PRODUCTS AND SERVICES

You are not required to buy any of the following optional products and services to enter into the Lease. The term of any product or service will be the Lease term, unless a different term is shown below. If you decide you want to purchase an optional product or service, review the terms of the contract that describe the product or service before you initial below. A completed copy of the contract will be given to you as soon as practicable. By initialing below, you indicate that you want to buy the optional products and services indicated. If the cost shown below is not shown as part of the itemization of Amount Due at Lease Signing or Delivery (Item 6), it has been added to the Gross Capitalized Cost (Item 7A).

| Optional Product or Service | Coverage | Price | Name of Provider | Approval |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | Lessee Initials N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A |
| N/A | N/A | N/A | N/A | Lessee Initials N/A |

## 18. TYPES AND AMOUNTS OF REQUIRED INSURANCE COVERAGE

You must maintain: Bodily Injury Coverage with $ 100,000 / $ 300,000 limits; Property Damage Coverage with $ 150,000 / $ 500,000 limits or combined single limit; Collision, Fire, Theft and Comprehensive Coverage with a maximum deductible of $ 1,000. See Item 23(a) for additional insurance provisions. You confirm that insurance policies that meet the requirements described in this Lease are in force on the date of this Lease as follows:

Insurance Company Name NATIONWIDE INSURANCE
Agency Address PO BOX 8370
Agent's Name NATIONWIDE SALES SOLUTION
Deductibles: Collision $ 500.00
Insurance Agency Name NATIONWIDE INSURANCE
Agency Phone Number (877)669-6877
Policy Number 0234P 760260
Comprehensive $ 500.00

## 19. SCHEDULED LEASE END AND LEASE TERM

A. This Lease is scheduled to end on a date determined as follows: (1) If the date of this Lease is the 29th, 30th, or 31st of the month, start with the 1st day of the month immediately following the date of this Lease and move forward by the number of months in the lease term (Item 19B); or (2) If the date of this Lease is not the 29th, 30th, or 31st of the month, start with the date of this Lease and move forward by the number of months in the lease term (Item 19B).

B. The scheduled lease term is 48 months

## 20. HOW THIS LEASE CAN BE CHANGED

This Lease contains the entire agreement between you and us relating to this Lease. Any change to the Lease must be in writing and both you and we must sign it. No oral changes are binding.

Lessee Signs X [signature]
Co-Lessee Signs X N/A

**NOTICE: THE OTHER SIDE OF THIS LEASE CONTAINS IMPORTANT TERMS AND CONDITIONS, INCLUDING AN ARBITRATION PROVISION. THE TERMS AND CONDITIONS ON THE REVERSE SIDE ARE PART OF THIS LEASE.**

Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this Lease, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Lessee Signs X [signature] Co-Lessee Signs X N/A

Notice is hereby given that the rights, but not the obligations, of N/A to purchase and/or sell the asset described in this Lease have been assigned to N/A pursuant to an agreement between N/A and N/A.

**NOTICE TO THE LESSEE: DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. YOU ARE ENTITLED TO A COPY OF THIS LEASE WHEN YOU SIGN IT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

YOU AGREE TO THE TERMS OF THIS LEASE. YOU ACKNOWLEDGE YOU HAVE EXAMINED THE VEHICLE, THAT THE VEHICLE IS EQUIPPED AS YOU WANT, AND THAT IT IS IN GOOD CONDITION. YOU ACCEPT THE VEHICLE FOR ALL PURPOSES OF THE LEASE. YOU UNDERSTAND THAT YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU READ BOTH SIDES OF THIS LEASE, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE (ITEM 24), BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED THIS LEASE.

## LESSEE SIGNATURES

Lessee Signature [signature] Date 11/06/17
Type/Print Lessee Name JEFFREY L SMITH
Co-Lessee Signature N/A Date N/A
Type/Print Co-Lessee Name N/A

## COMMERCIAL LESSEE SIGNATURE

Commercial Lessee N/A Date N/A By N/A
Type/Print Name N/A Type/Print Title N/A

## LESSOR'S ACCEPTANCE

This Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of this Lease.

Lessor Name: SERPENTINI CHEVROLET
Lienholder Name: WELLS FARGO AGENT
Assignee Name: ACAR LEASING LTD
By: [signature]
Type/Print Name: KEVIN [illegible]
Type/Print Title: FINANCE MANAGER

LAW FORM NO. [illegible]
© [illegible] The Reynolds and Reynolds Company [illegible]

LESSOR COPY

EXHIBIT A

**21. DEFAULT; REPOSSESSION AND OTHER REMEDIES**

If any of the following occurs, you will be in default under this Lease: • You do not pay any payment on its scheduled due date under this Lease (or, if in Texas [illegible] within 11 days of the scheduled due date) • You do not pay any other amount due under this Lease when we ask that you pay it • You provide any false or misleading information in any Lease application • You fail to maintain required insurance • You lose possession of the Vehicle by confiscation, forfeiture or other involuntary transfer whether or not the Vehicle is the subject of judicial or administrative proceedings • You assign the Lease or transfer the Vehicle without our prior written permission or attempt to do either • You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property • You do anything that endangers the Vehicle or your ability to pay your Lease obligations • You fail to return the Vehicle when required to do so under this Lease • You fail to meet any other obligation under this Lease • You do anything the law says is a default.

If you are in default, after providing any notice and waiting any time the law requires, we may do any of the following: • End this Lease and require you to pay the amount due at early termination • Take any action we believe is required to protect our interest in the Vehicle (for example buying insurance) and our action will not cure your default • Add any amounts we spend taking these actions to your Lease obligation and charge rent on the amount added, or at our option, ask you to pay these amounts right away • If the Vehicle has an electronic tracking device, use it to find the Vehicle • Cancel any optional products and services included with this Lease and apply any refund to your Lease obligations (you hereby instruct any provider of such products and services to pay us any refund or credit due on early cancellation) • Take (repossess) the Vehicle wherever we find it and enter any property where the Vehicle may be to do so • Sue you for damages or to get the Vehicle back • Pursue any other remedy the law permits.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, all as the law allows. We may use the license plates on the Vehicle to move it to a storage place. After repossessing the Vehicle, we will hold it free of any rights you may have under this Lease, subject to any right the law gives you to cure the default or recover the Vehicle. We may take and store any personal items that are in the Vehicle. If you do not ask for those items back, we may dispose of them as the law allows. Unless you tell us within five business days of any personal property you claim was in the Vehicle when it was repossessed, we will not be responsible for that property. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees, collection costs, and court costs. Ohio residents will not pay any attorney's fees.

If you reside in Texas, to the extent allowed by law you waive: (i) notice that we intend to end this Lease and require you to return the Vehicle; (ii) notice that we have ended this Lease and that you are required to return the Vehicle; (iii) notice that we intend to require you to pay the Early Termination Liability; (iv) notice that we are requiring you to pay the Early Termination Liability; (v) notice of our intention to take possession of the Vehicle; (vi) notice that we have taken possession of the Vehicle; and (vii) any other notices pertaining to our exercise of our rights or of our intention to exercise our rights.

**22. EARLY TERMINATION LIABILITY**

When the Lease Can End Early. You may terminate (end) the Lease early by returning the Vehicle to us and paying us your early termination liability (see below) when we ask for it.

We may end the Lease early if you are in default, the Vehicle is damaged or destroyed beyond repair, stolen or lost (a "Total Loss"), or you die and there is no surviving lessee. If we end the Lease, you must return the Vehicle to the place we designate and pay us the early termination liability (see below) when we ask for it.

Early Termination Liability. We will figure your early termination liability as follows:

Monthly Payment Lease. You will owe the amount, if any, by which the Adjusted Lease Balance (see definition below) exceeds the Vehicle's Fair Market Wholesale Value (see definition below) at termination. If this amount is more than the total of the following amounts, you will instead pay the total of the following amounts: • The total of your base scheduled payments not yet due; • An excess wear charge (see Item 23(c)); and • An [illegible]

[illegible]

Definition of Adjusted Lease Balance:

Monthly Payment Lease. The Adjusted Lease Balance equals the difference between (1) the Item 7C Adjusted Capitalized Cost and (2) all depreciation and amortized amounts in the base scheduled payments that have become due. Each Item 7I Base Scheduled Payment consists of • a rent charge portion and • a portion allocable to depreciation and any amortized amounts. Although the amount of your Item 7I Base Scheduled Payment does not change, different portions of each Base Scheduled Payment are allocated to • rent charge and • depreciation and any amortized amounts. The portion of a Base Scheduled Payment that is allocated to depreciation and any amortized amount is equal to the Base Scheduled Payment minus the rent charge for that month. We use the Constant Yield Method to figure the rent charge portion of each Base Scheduled Payment. Under the "Constant Yield Method," the rent charge for each scheduled period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it declines during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" is the difference between the Item 7C Adjusted Capitalized Cost and the sum of: (i) all depreciation and amortized amounts accrued during the previous periods, and (ii) any Base Scheduled Payment paid at Lease signing or delivery. The scheduled rent charge calculations are based on the assumption that we will receive your scheduled payments on their exact due dates and that the Lease goes to its full term.

Single Payment Lease. The Adjusted Lease Balance at the beginning of the Lease equals: (i) the Item 7C Adjusted Capitalized Cost minus (ii) the Item 7I Base Scheduled Payment. At the beginning of each month, the Adjusted Lease Balance increases by the rent charge for that month. We use the Constant Yield Method to figure the rent charge for each month. Under the "Constant Yield Method" the rent charge for each monthly period is earned in advance by multiplying the constant rate implicit in this Lease times the Balance Subject to Rent Charge as it increases during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" equals: (i) the Item 7C Adjusted Capitalized Cost, minus (ii) the Item 7I Base Scheduled Payment, plus (iii) all rent charges accrued during previous periods. The rent charge calculations are based on the assumption that the Lease goes to its full term.

Definition of Fair Market Wholesale Value: Unless you exercise your independent appraisal right (see below), the Fair Market Wholesale Value of the Vehicle is: • the price we receive for the Vehicle at disposition; • the highest offer we receive for disposition of the Vehicle; • the amount you and we agree in writing; • or the wholesale fair market value of the Vehicle.

Definition of Unused Base Scheduled Payment (Single Payment Lease): The Unused Base Scheduled Payment equals: (i) the Item 7I Base Scheduled Payment; divided by (ii) the number of months in the Lease Term (Item 19B); times (iii) the number of full months remaining after the date of the early termination until the Scheduled Lease End (Item 19A).

Your Independent Appraisal Right: To the extent your early termination liability takes into account the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's fair market wholesale value. If you do so within a reasonable time, we will use the appraised value as the Fair Market Wholesale Value. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

**23. OTHER TERMS AND CONDITIONS**

(a) Insurance. For the duration of this Lease term, and until you return the Vehicle, you agree to maintain the amounts and types of primary insurance as indicated in Item 18 on the front of this Lease in your name. Insurance may be obtained by you from anyone reasonably acceptable to us. You must indicate us or anyone we require as an additional insured and loss payee on your policy. Your policy must state that we will be given at least 10 days' notice of any material coverage change, reduction, or cancellation. If your insurer does not pay a claim for any reason, it will mean that you have not maintained the required insurance. You will pay for any loss we incur because you do not maintain required insurance or because the insurer does not pay a claim. If you fail to obtain and maintain the required insurance, we may, if we choose, buy it for you. We may add the amount we pay for this insurance to your unpaid Lease obligations and charge rent on the amount added, or at our option, ask you to pay it right away. If we decide to buy this insurance, we may either buy insurance that covers your interest and our interest, or buy insurance that covers only our interest, unless the law requires us to buy insurance that also protects your interests. If the Vehicle is damaged, stolen, or destroyed, and money becomes available from insurance, a judgment, a settlement, or the like, we will be entitled to the money. If the Lease ends in connection with our receipt of the money, we will treat any of the money we do not use to repair the Vehicle as part of the price we received for the Vehicle at disposition.

NOTICE: PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS LEASE.

(b) Total Loss of Vehicle. If the Vehicle is a Total Loss (as described in the second paragraph of Item 22, Early Termination Liability) during the Lease term, we may at our option agree in writing to continue this Lease and provide you with a substitute vehicle. If you and we do not agree to continue this Lease with a substitute vehicle, we will end the Lease early as described in Item 22 Early Termination Liability, and you will only owe the amounts described in the following paragraphs of this Item 23(b). But if: (a) the Vehicle was forfeited or confiscated under governmental authority, or (b) the Total Loss arose from your fraud, intentional wrongful act or omission, gross negligence, or other failure to use the Vehicle in accordance with this Lease (see Item 23(f)), then you will still owe the Item 22 Early Termination Liability.

If we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 18 and 23(a)), then:

Monthly Payment Lease. We will deduct the amount of any refunds we receive from cancelling optional insurance, maintenance, service, or other contracts included in this Lease from the Adjusted Lease Balance (see Item 22) to compute a net lease balance (the "Net Lease Balance"). If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount, if any, by which your insurance deductible exceeds $1,000 for the insurance settlement we receive; and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

If the insurance settlement we receive is more than the Net Lease Balance, you will receive a credit for any excess.

Single Payment Lease. You will receive a credit for the Unused Base Scheduled Payment (see Item 22). We will deduct the amount of any refunds we receive from canceling optional insurance, maintenance, service, or other contracts included in this Lease from the sum of the Adjusted Lease Balance (see Item 22) and the Unused Base Scheduled Payment to compute a net lease balance (the "Net Lease Balance"). If the insurance settlement we receive is more than the Net Lease Balance, you will also receive a credit for the excess.

If the Net Lease Balance is more than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount, if any, by which your insurance deductible exceeds $1,000 for the insurance settlement we receive; and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

[illegible]

(c) Standards for Wear and Use. [illegible]

(d) Security Deposit. [illegible]

(e) Option to Purchase Vehicle. [illegible]

(f) Return of the Vehicle. [illegible]

(g) Maintenance. [illegible] If repairs are needed, you will have the repairs or service performed. You will use original equipment manufacturer's parts or those of equal value in the maintenance and service of the Vehicle. We may but are not required to provide you with a replacement vehicle for any reason. You will maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. This maintenance record will be available to us at any time, and will be provided to us at the end of the Lease.

(h) Registration, Parking Tickets, Tolls and Taxes. You must keep the Vehicle currently registered. You must pay all parking tickets, tolls and traffic fines relating to the Vehicle. If you do not pay such tickets, tolls and fines, we may do so for you, and you will pay us upon demand. We may add the amount to what you owe us if you do not pay us when we make demand. You must pay when due or reimburse us if we pay for you, all government charges, fees and taxes whether assessed on you, us, or the Vehicle. You will not have to pay our income taxes. If you do not pay the charges, fees and taxes, and interest or penalties are assessed (unless the interest or penalties are a result of our negligence), you must pay the interest or penalties when due or reimburse us if we pay them. You must pay personal property taxes, ad valorem, sales, use or similar taxes assessed on the Vehicle, whether such fees or taxes are billed during or after the Lease term, and whether you are billed for them by the government or whether we pay them and bill you for them or include the amount of such taxes as part of your scheduled payment. We may change your scheduled payment if taxes change. If you don't pay a fine, penalty, toll or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus the Item 15 Administrative Fee.

(i) Use of the Vehicle. You will keep the Vehicle free from any liens or claims. You have the risk of loss, and are responsible for the Vehicle's damage or destruction. You will not: • Use the Vehicle illegally, improperly such as for towing that exceeds the manufacturer's towing recommendations, or for hire; • Without our prior written consent, alter or install equipment that makes the Vehicle unsafe or unlawful to operate; • Use the Vehicle in a manner that your insurance policy prohibits or in a way that produces unusually high depreciation; • Allow unlicensed drivers to drive the Vehicle; • Use the Vehicle for more than 30 days outside the state where you initially registered the Vehicle without our prior written permission; • Take the Vehicle out of the United States without our written consent except for trips to Canada that do not exceed 30 days; • Change the Vehicle without our written consent. You will not let anyone else do any of these things.

(j) Indemnification. We are not responsible for any injuries, damages, expenses or claims, including claims for attorney fees or claims the strict liability doctrine, caused by the maintenance, condition, or operation or use of the Vehicle. You agree to indemnify and hold us (and our affiliates, successors, agents, and insurers) harmless for all such injuries, damages, expenses and claims.

(k) Assignment of Unearned Premiums and Other Amounts. You assign to us any unearned refunded premiums or charges or other amounts relating to insurance or any optional product or service sold in connection with this Lease and returned or paid to us. We will use these amounts to reduce amounts you owe under this Lease. You will have no interest, increase, or profit with respect to such property.

(l) Your Odometer Obligations. You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperable, you will provide us with reasonable evidence of the Vehicle's actual mileage. If you are unable to do so, you will pay us our reasonable estimate of any reduction of the Vehicle's fair market value caused by the inability to determine the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

Important Note: Federal law requires you to tell us the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

(m) Assignment and Transfer of the Vehicle. You may not assign the Lease or transfer the Vehicle without our prior written permission. We may assign all of our rights under this Lease. Any person to whom this Lease is assigned may reassign it. Any sale and assignment by us will not be considered to change materially your duties, burden, or risk under this Lease.

(n) Ownership. We are the sole owners of the Vehicle including original accessories and any installed after the Lease begins. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any information or advice regarding possible tax consequences under this Lease.

(o) Inspection. Upon reasonable notice to you, at any reasonable place and time we choose we may inspect the Vehicle and you agree to cooperate with such inspection.

(p) Waiver. We may delay or refrain from enforcing any of our rights under this Lease without losing them.

(q) Giving Notice. Notices may be given personally or sent by first class mail. Notices mailed to us must be sent to the address shown in this Lease or to the address we direct from time to time. Notices shall be deemed given to us when they are personally given or actually received at our address. Notices shall be deemed given to you when they are personally given or when placed in the mail, addressed to you at your address then shown on our records, even though you might not actually receive our mailed notice. You agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period, in which case you agree that the state-required period is reasonable.

(r) Notice and Agreement Regarding Billing and Collection Messages to Wireless Telephones: You agree, in order for us to service your account or to collect any amounts you may owe, we may contact you by telephone at any telephone number associated with your account, including land-line, wireless, cellular, or VoIP/Internet telephone numbers, which could result in charges to you. We may also contact you at any email address you provide to us or by sending text messages, which could result in charges to you. Methods of contact may include using pre-recorded/artificial voice messages and/or use of an automatic dialing device, as applicable. Your agreement and consent also extends to any other agents, affiliates, or entities to whom we may assign, transfer, or sell your obligation for servicing or collection. You may revoke this consent for any telephone number or email address by contacting us and letting us know.

(s) Additional Amounts Due and Additional Credits: Regardless of how this Lease ends, you will owe us the following amounts: • Any official fees and taxes related to the termination; • Any other amounts due under this Lease including any unpaid late charges or other amounts due because you failed to meet your obligations under this Lease. If this Lease ends early, we may cancel any optional insurance, maintenance, service, or other contracts included in this Lease or claim benefits under them to reduce what you owe or repair the Vehicle. If the sum of the amounts you owe under this Lease exceeds the sum of the credits, you will owe us the difference. If the sum of the credits exceeds the amounts you owe, we will refund the difference to you.

(t) Disposition Fee Waiver: The Item 4A Disposition Fee will be waived if you purchase or lease a new General Motors vehicle when this Lease ends.

(u) Limited Power of Attorney: If there is any damage or loss to the Vehicle, you agree that we or our agent may settle any insurance claim or sign your name on any title or registration or on any check or draft we receive for that Vehicle damage or loss.

(v) General: If any part of this Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction. The rest of the Lease will be enforceable except as provided in the Arbitration Provision, below. This Lease is our entire agreement. We have made no promises to you not contained in this Lease. If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in this Lease.

**24. ARBITRATION PROVISION**

ARBITRATION PROVISION

PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

[illegible]

**25. LESSOR'S ASSIGNMENT**

[illegible]

# OHIO CERTIFICATE OF TITLE

ISSUING CNTY PORTAGE
RESIDENT CNTY SUMMIT

## STATE OF OHIO

No. 67 0204 2510

ORIGINAL

ISSUE DATE 11/17/2017

IDENTIFICATION NUMBER 1G1ZE5ST8HF144670
COMMENTS

PURCHASE PRICE $22,650.00
EXEMPT RL
MLG BRAND ACTUAL

YEAR 2017 MAKE CHEV MAKE DESCRIPTION CHEVROLET
BODY TYPE 4D MODEL DESCRIPTION MALIBU
MILEAGE 4,745 EVIDENCE OH-6701926812

CONVERSION

BRAND(S)

OWNER
ACAR LEASING LTD
4001 EMBARCADERO DR
ARLINGTON, TX 76014

99051825 LD006485

PREVIOUS OWNER
SERPENTINI CHEVROLET TALLMADGE
140 WEST AVE
TALLMADGE, OH 44278

77900740 ND00355

FIRST LIENHOLDER DATE OF LIEN: 11/17/2017
WELL FARGO BANK NA AS
COLLATERAL AGT
PO BOX 9000
LUTHERVILLE, MD 21094

LIEN DISCHARGE
Lienholder ____
by: ____ Authorized signature ____ date
CLERK LIEN CANCELLATION
by: ____ Deputy Clerk ____ date

LIEN DISCHARGE
Lienholder ____
by: ____ Authorized signature ____ date
CLERK LIEN CANCELLATION
by: ____ Deputy Clerk ____ date

WITNESS MY HAND AND OFFICIAL SEAL THIS 17TH DAY OF NOVEMBER, 2017

%140865601

*%140865601*

%140865601

(SEAL) PORTAGE COUNTY CLERK OF COURTS RAVENNA, OHIO

JILL FANKHAUSER
CLERK OF COURTS

MAT
MAT

VOID IF ALTERED

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

BMV 3800 4/16 [760-1503]

EXHIBIT



<u>STATEMENT FROM REGISTERED OWNER</u>

This is to hereby certify that ACAR Leasing, Ltd. is a wholly owned subsidiary of AmeriCredit Financial Services, Inc. dba GM Financial.

Account Representative

Subscribed and sworn before me on this 21 day of Jan 2014.

Notary Public

TAMMY ANN WARD
Notary Public
STATE OF TEXAS

EXHIBIT C

Execution Version

ACAR LEASING LTD.,
as Borrower,

AMERICREDIT FINANCIAL SERVICES, INC.,
as Lender and as Servicer

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Administrative Agent and as Collateral Agent

# AMENDED AND RESTATED CREDIT AND SECURITY AGREEMENT

Dated as of May 23, 2013

NYC01_84715597v5

(d) The Collateral Agent hereby makes the following representations on warranties on which the Borrower and the Lender shall rely:

(i) the Collateral Agent is a national banking association duly organized, validly existing and in good standing under the laws of the United States; and

(ii) the Collateral Agent has full power, authority and legal right to execute, deliver and perform this Agreement and shall have taken all necessary action to authorize the execution, delivery and performance by it of this Agreement.

SECTION 3.3. Release of Collateral.

(a) The Collateral Agent may, and when required by this Agreement will, execute instruments to release property from the security interest granted pursuant to Section 3.2, or convey the Collateral Agent's interest in the same, in a manner and under circumstances consistent with this Agreement. The Collateral Agent will release property from the security interest granted pursuant to Section 3.2 only pursuant to and in accordance with this Agreement. The Collateral Agent may rely upon an Officer's Certificate and an Opinion of Counsel in connection with any such release. Counsel rendering any such Opinion of Counsel may rely, without independent investigation, on the accuracy and validity of any certificate or other instrument delivered to the Collateral Agent, in connection with any such action.

(b) The Collateral Agent will be deemed to release, and does release, any and all Liens and other rights and interests it possesses or may possess from time to time, without further action of the parties, in, to and under a Collateral Leased Vehicle, the proceeds thereof and the rights of the related Borrower and/or AmeriCredit (individually or as Servicer) under any contract or agreement for the sale or other disposition of such Collateral Leased Vehicle (including pursuant to any insurance policy with respect to or covering such Collateral Leased Vehicle), effective immediately prior to the sale or other disposition of such Collateral Leased Vehicle (provided that the Servicer will deposit all proceeds of such Collateral Leased Vehicle in accordance with the Basic Servicing Agreement and, if applicable, the related Servicing Supplement thereto).

(c) No party relying upon an instrument executed by the Collateral Agent as provided in this Section 3.3 is required to verify the Collateral Agent's authority, inquire into the satisfaction of any conditions precedent or require evidence as to the application of any monies.

(d) The Collateral Agent, at such time as the Secured Obligations and all sums due to the Administrative Agent pursuant to Section 7.5 have been paid in full, will release the Collateral from the security interest granted pursuant to Section 3.2 and release to the Borrower or any other Person entitled thereto any funds then on deposit in any Collection Account.

(e) Upon the request of the Borrower, the Collateral Agent agrees to execute and deliver any termination statements for filing under the provisions of the UCC of any applicable jurisdiction pursuant to Section 3.1(b)(ii) in connection with the release of the security interest granted pursuant to Section 3.2.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers duly authorized as of the day and year first above written.

ACAR LEASING LTD.,
as Borrower

By: WILMINGTON TRUST COMPANY,
not in its individual capacity, but solely as Owner Trustee

By: [signature]
Name: Rachel L. Simpson
Title: Assistant Vice President

AMERICREDIT FINANCIAL SERVICES, INC.,
as Lender and as Servicer

By: ____________________
Name:
Title:

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Administrative Agent and as Collateral Agent

By: ____________________
Name:
Title:

[Signature Page to the Amended and Restated Credit and Security Agreement]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers duly authorized as of the day and year first above written.

ACAR LEASING LTD.,
as Borrower

By: WILMINGTON TRUST COMPANY,
not in its individual capacity, but solely as Owner Trustee

By: ______________________________
Name:
Title:

AMERICREDIT FINANCIAL SERVICES, INC.,
as Lender and as Servicer

By: [signature]
Name: Sheli Fitzgerald
Title: Senior Vice President, Corporate Finance

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Administrative Agent and as Collateral Agent

By: ______________________________
Name:
Title:

[Signature Page to the Amended and Restated Credit and Security Agreement]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers duly authorized as of the day and year first above written.

ACAR LEASING LTD.,
as Borrower

By: WILMINGTON TRUST COMPANY,
not in its individual capacity, but solely as Owner Trustee

By: ______________________________
Name:
Title:

AMERICREDIT FINANCIAL SERVICES, INC.,
as Lender and as Servicer

By: ______________________________
Name:
Title:

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Administrative Agent and as Collateral Agent

By: ______________________________
Name: Cheryl Zimmerman
Title: Vice President

[Signature Page to the Amended and Restated Credit and Security Agreement]